### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Universal Food & Beverage Company, Inc. et al. | ) | Case No.: 07-15955 |
| | ) | |
| | ) | (Jointly Administered with Case Nos. |
| | ) | 07-15960 and 07-15962) |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | Honorable Jacqueline P. Cox |
| | ) | |

### AGREED FINAL ORDER (A) AUTHORIZING DEBTORS-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, AND (B) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS

Upon the motion (the "**Motion**") of Universal Food & Beverage Company ("**Universal Food**"), Universal Food & Beverage Company of Georgia, a subsidiary of Universal Food ("**Universal Food of Georgia**") and Universal Food & Beverage Company of Virginia, a subsidiary of Universal Food ("**Universal Food of Virginia**"; Universal Food, Universal Food of Georgia and Universal Food of Virginia are hereinafter referred to, collectively, as the "**Universal Food Entities**"), Debtors and Debtors-in-possession (the "**Debtors**") in the above-captioned Chapter 11 Cases (collectively, the "**Case**") for the entry of an agreed interim order (the "**Interim Order**"), pursuant to sections 361 and 364 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (a) authorizing the Debtors to obtain post-petition financing pursuant to section 364 of the Bankruptcy Code from Cipher Capital Partners LLC (referred to herein as "**Cipher**" or the "**Post-Petition Lender**"), subject to the terms and conditions set forth therein, (b) granting security interests, mortgages and other liens and superpriority claims to the Post-

Petition Lender, pursuant to sections 364(d)(1), 364(c)(1), (2) and (3) of the Bankruptcy Code, all as more fully set forth therein, and (c) scheduling a final hearing, pursuant to Bankruptcy Rule 4001(c), upon the entry of the Interim Order on September 12, 2007 and the scheduling of the final hearing and consideration of this proposed final order (this "**Final Order**") and upon the proceedings held before this Court and good and sufficient cause appearing therefor, THE PARTIES STIPULATE, AND, WITH RESPECT TO THE MATTERS IN THE LAST TWO SENTENCES OF PARAGRAPH Q, AND IN PARAGRAPHS O, R, S, AND T, THE COURT FINDS AS FOLLOWS:

A.      On August 31, 2007 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties as Debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A Committee of Unsecured Creditors (the "**Committee**") was appointed on September 20, 2007. The proposed counsel for the Committee is Jonathan Friedland, Schiff Hardin LLP, 6600 Sears Tower, Chicago, Illinois 60601, jfriedland@schiffhardin.com. There is presently no pending request or motion for appointment of a trustee or examiner.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue of the Case and the Motion in this district is proper pursuant to 28 U.S.C. §1408.

C.      Universal Food is a corporation organized under the laws of Nevada. Universal Food of Georgia is a corporation organized under the laws of Georgia. Universal Food of Virginia is a corporation organized under the laws of Virginia. For many years prior to the filing of the Case, Universal Food's principal office was located at 3830 Commerce Drive, St. Charles, Illinois 60174. Subsequent to the appointment of Howard Korenthal of MorrisAnderson

-2-

Associates, Ltd. as chief restructuring officer of the Debtors (the "**Chief Restructuring**

**Officer**"), the principal office of Universal Food was relocated to the Chief Restructuring

Officer's office at 55 W. Monroe St., Suite 2500, Chicago, Illinois 60603 to eliminate the

expense of maintaining the office in St. Charles.   Prior to the Petition Date, the Debtors

manufactured aseptic packaging products.

D.    Pursuant to (i) those certain Amended and Restated Senior Secured Convertible

Notes each dated on or about February 14, 2007 (including all schedules, exhibits and

attachments thereto, collectively, the "**Initial Notes**") by and among certain of the Junior Pre-

Petition Lenders (Gamma Opportunity Capital Partners, LP ("**Gamma**"), Bruce Neviaser

("**Neviaser**"), Vicis Capital Master Fund, LLC, Magnetar Capital Master Fund, LLC, Kauai

Partners, L.P., Capital Ventures International, RHP Master Fund, Ltd., Enable Growth Partners,

L.P., Enable Opportunity Partners, L.P., Pierce Diversified Strategy Master Fund, LLC,

Crestview Capital Master, L.L.C., Midsummer Investment, Ltd., Bushido Capital Master Fund,

LP, Gryphon Master Fund, L.P., and GSSF Master Fund, LP are referred to herein, collectively,

as the "**Junior Pre-Petition Lenders**") and the Debtors and (ii) those certain Senior Secured

Convertible Notes each dated on or about February 14, 2007 (including all schedules, exhibits

and attachments thereto, collectively, the "**Secondary Notes**"; the Initial Notes and the

Secondary Notes are referred to hereinafter, collectively, as the "**Junior Pre-Petition Financing**

**Documents**"), by and among certain of the Junior Pre-Petition Lenders and the Debtors, the

Junior Pre-Petition Lenders have made certain loans and financial accommodations (the "**Junior**

**Pre-Petition Loans**") to the Debtors to, *inter alia*, fund the Debtors' operations.

E.    Pursuant to the Junior Pre-Petition Financing Documents, as of the Petition Date,

the Debtors owed the Junior Pre-Petition Lenders approximately $5,100,000, exclusive of

- 3 -

interest, fees, attorneys' fees, costs, expenses and other charges provided for in the Junior Pre-Petition Financing Documents. For purposes of this Final Order, the "**Junior Pre-Petition Indebtedness**" shall include the principal of the Junior Pre-Petition Loans and all interest, fees, expenses and other charges owing in respect of such loans, including any reasonable attorneys', accountants', and financial advisors' fees that are chargeable or reimbursable under the Junior Pre-Petition Financing Documents.

F.    To secure the Junior Pre-Petition Indebtedness, Midsummer Capital LLC, the Junior Collateral Agent for the Junior Pre-Petition Lenders (the "**Junior Collateral Agent**") was granted (i) pursuant to that certain Security Agreement dated June 21, 2006 (the "**June 2006 Security Agreement**") by and among the Junior Collateral Agent and the Debtors, a security interest in all present and after acquired property of the Debtors including, without limitation, all of the following property of the Debtors: (a) all Accounts; (b) all Chattel Paper, (whether tangible or electronic); (c) certain Commercial Tort Claims set forth in the June 2006 Security Agreement; (d) all Deposit Accounts, all cash and all other property from time to time deposited therein and the monies and property in the possession or under the control of the Junior Collateral Agent or certain of the Junior Pre-Petition Lenders or any affiliate, representative, agent or correspondent of thereof; (e) all Documents; (f) all Equipment; (g) all Fixtures; (h) all General Intangibles (including, without limitation, all Payment Intangibles); (i) all Goods; (j) all Instruments; (k) all Inventory; (l) all Investment Property; (m) all Copyrights, Patents and Trademarks, and all Licenses, as those terms are defined in the June 2006 Security Agreement; (n) all Letter-of-Credit Rights; (o) all Supporting Obligations; (p) all other tangible and intangible personal property of the Debtors; and (q) all Proceeds of the foregoing collateral; (ii) pursuant to that certain Deed to Secure Debt, Assignment of Leases and Rents and Security

- 4 -

Agreement dated on or about June 22, 2006 (the "**June 2006 Deed, Assignment and Security Agreement**") between the Junior Collateral Agent and Universal Food of Georgia, a security interest in all present and after acquired property of Universal Food of Georgia including, without limitation, all of the following property of Universal Food of Georgia: (a) certain real property located in Georgia (the "**Premises**"); (b) all buildings, structures, improvements and fixtures then or later located or constructed on the Premises (the "**Improvements**"); (c) all interests of Universal Food of Georgia arising out of the Premises and Improvements, as more fully set forth in the June 2006 Deed, Assignment and Security Agreement; (d) all of Universal Food of Georgia's right, title and interest to personal property located in or about the Premises and the Improvements, as more fully set forth in the June 2006 Deed, Assignment and Security Agreement; and (e) all Accounts, General Intangibles, Chattel Paper, Documents, Instruments, Inventory, Goods, Equipment, Investment Property, Deposit Accounts, Letter(s) of Credits, commercial tort claims, and all books and records relating to the foregoing, as more fully set forth in the June 2006 Deed, Assignment and Security Agreement; (iii) pursuant to that certain Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement dated on or about December 31, 2006 (the "**December 2006 Deed, Assignment and Security Agreement**") between the Junior Collateral Agent and Universal Food of Georgia, a security interest in all present and after acquired property of Universal Food of Georgia including, without limitation, all of the following property of Universal Food of Georgia: (a) the Premises; (b) the Improvements; (c) all interests of Universal Food of Georgia arising out of the Premises and Improvements, as more fully set forth in the December 2006 Deed, Assignment and Security Agreement; (d) all of Universal Food of Georgia's right, title and interest to personal property located in or about the Premises and the Improvements, as more fully set forth in the December

2006 Deed, Assignment and Security Agreement; and (e) all Accounts, General Intangibles, Chattel Paper, Documents, Instruments, Inventory, Goods, Equipment, Investment Property, Deposit Accounts, Letter(s) of Credits, commercial tort claims, and all books and records relating to the foregoing, as more fully set forth in the December 2006 Deed, Assignment and Security Agreement; and (iv) pursuant to that certain Security Agreement dated on or about January 1, 2007 (the "**January 2007 Security Agreement**"; together with the June 2006 Security Agreement, the June 2006 Deed, Assignment and Security Agreement and the December 2006 Deed, Assignment and Security Agreement, the "**Junior Pre-Petition Security Interests**") by and among the Junior Collateral Agent and the Debtors, a security interest in all present and after acquired property of the Debtors including, without limitation, all of the following property of the Debtors: (a) all Accounts; (b) all Chattel Paper, (whether tangible or electronic); (c) certain Commercial Tort Claims set forth in the December 2006 Security Agreement; (d) all Deposit Accounts, all cash and all other property from time to time deposited therein and the monies and property in the possession or under the control of the Junior Collateral Agent or certain of the Junior Pre-Petition Lenders or any affiliate, representative, agent or correspondent of thereof; (e) all Documents; (f) all Equipment; (g) all Fixtures; (h) all General Intangibles (including, without limitation, all Payment Intangibles); (i) all Goods; (j) all Instruments; (k) all Inventory; (l) all Investment Property; (m) all Copyrights, Patents and Trademarks, and all Licenses, as those terms are defined in the December 2006 Security Agreement; (n) all Letter-of-Credit Rights; (o) all Supporting Obligations; (p) all other tangible and intangible personal property of the Debtors; and (q) all Proceeds of the foregoing collateral. All of the foregoing collateral generally described above, and all proceeds thereof, shall be referred to herein collectively as the "**Junior Pre-Petition Collateral**," and such liens shall be

referred to herein as the "**Junior Pre-Petition Lenders' Liens**". The Junior Collateral Agent

perfected the Junior Pre-Petition Lenders' Liens on the Junior Pre-petition Collateral by: (i)

recording a UCC-1 financing statement in the Superior Court of Fulton County, Georgia, on June

28, 2006; (ii) recording a UCC-1 financing statement with the Nevada Secretary of State on June

27, 2006; (iii) recording a UCC-1 financing statement with the Virginia State Corporation

Commission on June 28, 2006; (iv) recording the June 2006 Deed, Assignment and Security

Agreement in the Superior Court of Chatham County, Georgia, on October 24, 2006; and (v)

recording the December 2006 Deed, Assignment and Security Agreement in the Superior Court

of Chatham County, Georgia, on March 6, 2007.

      G.    Pursuant to that certain Loan and Security Agreement dated as of August 31, 2007

(the "**2007 Loan Agreement**") by and among Cipher, Neviaser and Gamma (collectively, the

"**Senior Pre-Petition Lenders**") and the Debtors, the Senior Pre-Petition Lenders have made

certain loans and financial accommodations (the "**Senior Pre-Petition Loans**") to the Debtors

to, *inter alia,* fund the Debtors' operations.

      H.    Pursuant to the Senior Pre-Petition Financing Documents (as defined below), as

of the Petition Date, the Debtors owed the Senior Pre-Petition Lenders approximately $135,000

with respect to the Senior Pre-Petition Financing Documents, exclusive of interest, fees,

attorneys' fees, costs, expenses and other charges provided for in the Senior Pre-Petition

Financing Documents. For purposes of this Final Order, the "**Senior Pre-Petition**

**Indebtedness**" shall include the principal of the Senior Pre-Petition Loans and all interest, fees,

expenses and other charges owing in respect thereof and all interest, fees, expenses and other

charges owing in respect of such loans, including any reasonable attorneys', accountants', and

financial advisors' fees that are chargeable or reimbursable under the Senior Pre-Petition Financing Documents.

I.      To secure the Senior Pre-Petition Indebtedness, the Debtors granted to Cipher, as collateral agent for the Senior Pre-Petition Lenders (the "**Senior Collateral Agent**"), pursuant to the 2007 Loan Agreement, a security interest (the "**Senior Pre-Petition Security Interests**") in all assets of the Debtors, including, without limitation, all of the Junior Pre-Petition Collateral (referred to herein, collectively, as the "**Senior Pre-Petition Collateral**," and such liens shall be referred to herein as the "**Senior Pre-Petition Lenders' Liens**").  The Senior Collateral Agent perfected the Senior Pre-Petition Lenders' Liens on the Senior Pre-Petition Collateral by: (i) recording a UCC-1 financing statement in the Superior Court of Chatham County, Georgia, on August 30, 2007; (ii) recording a UCC-1 financing statement with the Nevada Secretary of State on August 30, 2007; (iii) recording a UCC-1 financing statement with the Virginia State Corporation Commission on August 31, 2007.

J.      The Junior Pre-Petition Loans and the Junior Pre-Petition Security Interests are fully subordinated to the Senior Pre-Petition Loans and the Senior Pre-Petition Security Interests pursuant to that certain Subordination Agreement dated as of September 11, 2007, ~~a copy of~~ ~~which is attached hereto as Exhibit A~~ (the "**Subordination Agreement**"; the 2007 Loan Agreement and the Subordination Agreement are referred to hereinafter, collectively, as the "**Senior Pre-Petition Financing Documents**") by and among certain of the Junior Pre-Petition Lenders, the Junior Collateral Agent, the Senior Pre-Petition Lenders and the Post-Petition Lender.

K.      Grayson National Bank has an alleged senior security interest in certain real property of the Debtors' located in Virginia (the "**Virginia Real Property**").

- 8 -

L.      Dale's Kitchen, LLC, and Holland & Knight LLP (each a "**UCC Party**," and, collectively, the "**UCC Parties**") have filed active UCC financing statements against certain property of the Debtors. The Debtors (and, as appropriate, the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender, and any subsequently-appointed trustee or other fiduciary to the Debtors' estate) reserve all rights and defenses with respect to the UCC Parties, including, without limitation, (a) with respect to the validity, priority and extent of any lien claimed by a UCC Party and (b) with respect to the characterization of the underlying relationship with such entities as financing leases or true leases.

M.      On July 19, 2007, the County of Grayson, Virginia ("**Grayson County**"), filed a Memorandum of Lis Pendens in conjunction with a pre-petition suit it filed against Universal Food & Beverage Company of Virginia which sought a lien on certain real property and fixtures of the Debtors located in Grayson County, Virginia.

N.      The Debtors acknowledge that the Junior Pre-Petition Lenders' Liens and the Senior Pre-Petition Lenders' Liens constitute valid, binding, enforceable, and perfected first-priority liens on the Junior Pre-Petition Collateral and the Senior Pre-Petition Collateral, respectively, and are not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to or otherwise subject to certain liens permitted by the Subordination Agreement, to the extent such liens are valid, binding, enforceable and in existence on the Petition Date in accordance with the provisions of this Final Order). The Debtors further acknowledge that (a) the Junior Pre-Petition Indebtedness and the Senior Pre-Petition Indebtedness constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (b) no offsets,

- 9 -

defenses, or counterclaims to the Junior Pre-Petition Indebtedness or the Senior Pre-Petition Indebtedness exist. **FINALLY, THE DEBTORS HEREBY WAIVE, RELEASE AND DISCHARGE THE JUNIOR PRE-PETITION LENDERS AND THE SENIOR PRE-PETITION LENDERS AND THEIR AFFILIATES, AGENTS, ATTORNEYS, OFFICERS, DIRECTORS AND EMPLOYEES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION ARISING OUT OF, BASED UPON OR RELATED TO, IN WHOLE OR IN PART, THE JUNIOR PRE-PETITION FINANCING DOCUMENTS, THE SENIOR PRE-PETITION FINANCING DOCUMENTS, ANY ASPECT OF THE PRE-PETITION RELATIONSHIP BETWEEN THE JUNIOR PRE-PETITION LENDERS OR THE SENIOR PRE-PETITION LENDERS AND THE DEBTORS, AND ANY OTHER ACTS OR OMISSIONS BY THE JUNIOR PRE-PETITION LENDERS OR THE SENIOR PRE-PETITION LENDERS IN CONNECTION WITH EITHER THE JUNIOR PRE-PETITION FINANCING DOCUMENTS OR THE SENIOR PRE-PETITION FINANCING DOCUMENTS OR THE JUNIOR PRE-PETITION LENDERS' OR SENIOR PRE-PETITION LENDERS' PRE-PETITION RELATIONSHIP WITH THE DEBTORS. SUBJECT TO PARAGRAPH 9 BELOW, THIS WAIVER IS NOT BINDING ON THE COMMITTEE.**

      O.      An immediate and critical need exists for the Debtors to obtain funds in order to preserve the value of the Debtors' assets. The Debtors are unable to obtain the required funds in the form of (i) unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (ii) unsecured debt having the priority afforded by section 364(c)(1) of the

Bankruptcy Code, or (iii) debt secured as described in section 364(c)(2) or (3) or section 364(d) of the Bankruptcy Code except as set forth herein.

     P.     Except with respect to the Virginia Real Property or any property (the "**Leased Property**") in possession of the Debtors pursuant to a lease agreement, the Junior Pre-Petition Lenders and Senior Pre-Petition Lenders assert, and the Debtors acknowledge, that substantially all of the Debtors' assets are subject to the Junior Pre-Petition Lenders' Liens and the Senior Pre-Petition Lenders' Liens. The Junior Pre-Petition Lenders and Senior Pre-Petition Lenders have objected to any further use of the Junior Pre-Petition Collateral or Senior Pre-Petition Collateral by the Debtors, except under the terms of this Final Order. The Junior Pre-Petition Lenders and Senior Pre-Petition Lenders reserve the right to assert that the Junior Pre-Petition Liens or Senior Pre-Petition Liens include a lien on the Virginia Real Property or the Leased Property.

     Q.     The Junior Pre-Petition Lenders and Senior Pre-Petition Lenders have indicated a willingness to consent and agree to the financing arrangements contemplated by this Final Order, and the Post-Petition Lender is willing to provide the additional financing contemplated herein, all subject to the conditions and provisions of this Final Order assuring, inter alia, that the Post-Petition Liens (as defined below) and the various claims, superpriority claims and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Final Order. The Post-Petition Lender has acted in good faith in consenting to and in agreeing provide the post-petition financing contemplated by this Final Order. The reliance of the Post-Petition Lender on the assurances referred to above is in good faith and the Post-Petition Lender is entitled to the benefits of section 364(e) of the Bankruptcy Code.

446059.8 054391-40406

R.     Notice of the interim hearing on the Motion and the Interim Order and notice of the final hearing on the Motion and this Final Order has been provided (by hand, telecopy, overnight mail or courier) to counsel to the Pre-Petition Lenders, counsel to the Post-Petition Lender, the UCC Parties, Grayson County, Grayson National Bank, the United States Trustee for the Northern District of Illinois (the **"United States Trustee"**), and the 20 largest unsecured creditors of the Debtors, and other entities claiming liens on or security interests in the Junior Pre-Petition Collateral and the Senior Pre-Petition Collateral, to the extent such claims are evidenced by filings of UCC financing statements in the appropriate jurisdiction. Notice of the final hearing on the Motion and this Final Order has also been provided to the Committee. In view of the urgency of the relief requested, such notice constitutes sufficient notice under section 102(1) of the Bankruptcy Code and Bankruptcy Rule 4001 and no other notice need be given.

S.     Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will allow the Debtors to protect the value of the Debtors' estates. The financing arrangement authorized hereunder is vital to avoiding immediate and irreparable harm to the Debtors' estates. Consummation of such financing therefore is in the best interests of the Debtors' estates.

T.     The financing arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtors and the Post-Petition Lender. The terms of such financing arrangements are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. As such, the Debtors and the Post-Petition Lender are entitled to the protections provided by section 364(e) of the Bankruptcy Code.

- 12 -

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.   Authorization to Borrow Monies.

(a)   Pursuant to the terms of this Final Order, the Debtors are hereby authorized to borrow from the Post-Petition Lender (i) up to $285,000 in addition to the authorized financing under the Interim Order and (ii) as mutually agreed by the Post-Petition Lender, in its sole discretion, and the Debtors, up to an additional $30,000 (collectively, the "**Post-Petition Loan**"), which loan shall mature on October 30, 2007 (the "**Maturity Date**"). The Post-Petition Lender may, in its sole discretion, elect to extend the Maturity Date of the Post-Petition Loan for up to an additional thirty (30) days beyond the Maturity Date in its sole discretion. The Post-Petition Loan shall be governed by the terms of this Final Order and the provisions of the Senior Pre-Petition Financing Documents (except as otherwise set forth herein or as such documents are inconsistent with the terms of this Final Order, in which event the Final Order shall control) and the Debtors shall perform their obligations hereunder and thereunder.

(b)   The Post-Petition Loan shall be used only for the purposes, and up to the amounts listed, in the budget attached hereto as Exhibit **A**, or in such other budget agreed to by the Post-Petition Lender in its sole discretion (the "**Approved Budget**"), provided, however, that the amounts provided for professional fees in Exhibit B may not be reduced or limited. Notwithstanding the foregoing, the Debtors shall be deemed to be in compliance with the Approved Budget so long as their aggregate cash disbursements, measured on a weekly basis, are less than 110% of the aggregate amount provided for in the Approved Budget for each week. The Debtors shall use their best efforts not to exceed the weekly aggregate amount of cash disbursements set forth in the Approved Budget, except where absolutely necessary to the preservation of the Debtors' assets. On Tuesday of each week, the Debtors shall deliver to the

Post-Petition Lender a variance report comparing, for the preceding week, actual sales, receipts and expenditures to budgeted sales, receipts and expenditures, and explaining any material variance between budgeted and actual results. Further, the Debtors shall permit the Post-Petition Lender and its professionals reasonable access during business hours to the Debtors' premises and books and records.

(c)     The Debtors are authorized to enter into such non-material modifications and amendments to the Approved Budget without further Court order as may be agreed upon in writing by the Debtors and the Post-Petition Lender, after notice to the Committee.

(d)     Interest on the outstanding principal amount of the Post-Petition Loan, plus fees, attorneys' fees, costs, expenses and other charges (together with the interest, the "**Post-Petition Indebtedness**") shall accrue at a per annum rate equal to 16.0%. The Junior Pre-Petition Indebtedness and Senior Pre-Petition Indebtedness shall continue to accrue interest on the respective outstanding principal amounts pursuant to the Junior Pre-Petition Financing Documents and the Senior Pre-Petition Financing Documents.

(e)     In connection with the Post-Petition Loan, the Debtors are authorized and directed to pay the Post-Petition Lender a commitment fee in an amount equal to 3.0% of the Post-Petition Loan, which shall be payable upon the earlier of (i) the sale of the Post-Petition Collateral or (ii) the Maturity Date.

(f)     From and after the date of the Interim Order (the "**Effective Date**") and until the indefeasible payment in full in cash of the Post-Petition Indebtedness, the Senior Pre-Petition Indebtedness and the Junior Pre-Petition Indebtedness, the proceeds of the Post-Petition Loan, the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral and the Post-Petition Collateral (hereinafter defined) shall not, directly or indirectly, be used to pay expenses of the

- 14 -

Debtors or otherwise disbursed except for: (i) those expenses, payments, and/or disbursements that are expressly set forth in the Approved Budget or otherwise permitted under this Final Order; (ii) compensation and reimbursement of expenses and fees incurred prior to the Termination Date (as defined below) by counsel retained by the Committee, in an amount not to exceed $30,000, provided that the allowed $30,000 shall not cover fees and expenses incurred by counsel to the Committee, directly or indirectly, in respect of, arising from, or relating to, the initiation or prosecution of any action (w) contesting the validity, priority, extent or amount of the claims or liens asserted by the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender, (x) for avoidance or recovery of a preference or fraudulent conveyance, (y) seeking to exercise any other avoidance power against the Junior Pre-Petition Lenders or the Senior Pre-Petition Lenders, or (z) asserting any other claim or defense against the Junior Pre-Petition Lenders or the Senior Pre-Petition Lenders, provided, however, that the foregoing limitations shall not include allowed fees and expenses incurred in any investigation relating thereto; (iii) compensation and reimbursement of expenses and fees incurred by Schwartz Cooper Chartered, counsel for certain of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender; and (iv) amounts due to the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender, and if to reimburse the Junior Pre-Petition Lenders, the Junior Collateral Agent, the Senior Pre-Petition Lenders, the Senior Pre-Petition Collateral Agent, the Post-Petition Lender, or the Committee for the reasonable fees and expenses of their accountants, attorneys or other professionals hereunder or under the Junior Pre-Petition Financing Documents or under the Senior Pre-Petition Financing Documents, such amounts shall be subject to section 506(b) of the Bankruptcy Code (with respect to the Junior Pre-Petition Lenders and the Senior Pre-Petition Lenders) and shall be reasonable, and shall be subject to

- 15 -

approval by the Court; provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (i) or (ii) and shall not affect the right of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender to object to any administrative claims, including fees and expenses of professionals, and no such consent by the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender to any such administrative claims shall be implied from any action, inaction or acquiescence by the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender or otherwise. Except as set forth in the Approved Budget, neither the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders, nor the Post-Petition Lender have consented or agreed to the use of the proceeds of the Post-Petition Loan, the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral or the Post-Petition Collateral.

2.    Pre-Petition Collateral, Post-Petition Collateral, Cash Collateral, Application of Proceeds.

(a)    From and after the Effective Date until: (i) the indefeasible payment in full in cash of the Post-Petition Indebtedness, the Senior Pre-Petition Indebtedness and the Junior Pre-Petition Indebtedness; and (ii) the termination of any commitments or obligations under this Final Order, subject to the rights of holders of senior liens, the Debtors are hereby authorized and directed to retain all "cash collateral" (as defined in section 363 of the Bankruptcy Code) in their possession or control arising from, or constituting proceeds of, the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral or the Post-Petition Collateral (collectively, the "**Cash Collateral**"). Cash Collateral shall be held by the Debtors in a segregated money-market account at LaSalle Bank, N.A., and shall be applied as and to the extent specified in Paragraph 2(b) hereof. For purposes of this Final Order, "proceeds" of any collateral shall mean proceeds

- 16 -

(as defined in the Uniform Commercial Code) of such collateral as well as: (w) any and all
proceeds from a sale of any collateral pursuant to section 363 of the Bankruptcy Code; (x) any
and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from
time to time with respect to such collateral; (y) any and all payments (in any form whatsoever)
made or due and payable to the Debtors in connection with any requisition, confiscation,
condemnation, seizure or forfeiture of all or any part of such collateral by any governmental
body, authority, bureau or agency (or any person under color of governmental authority); and (z)
other payments, dividends, interest or other distributions on or in respect of any of such
collateral.

      (b)     Subject to the rights of holders of senior liens, if any, proceeds or
payments in respect of the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral, the
Post-Petition Collateral and the Cash Collateral relating to the Junior Pre-Petition Collateral, the
Senior Pre-Petition Collateral or the Post-Petition Collateral retained by the Debtors in
accordance with Paragraph 2(a) hereof shall be applied by the Debtors (i) first to the payment of
all accrued interest, costs, fees (including reasonable attorneys' fees) and expenses on the Post-
Petition Loan, (ii) second to the payment of any principal outstanding on the Post-Petition Loan
and (iii) finally, pursuant to further order of this Court to the Junior Pre-Petition Lenders and the
Senior Pre-Petition Lenders as their interests appear pursuant to the Junior Pre-Petition Financing
Documents and the Senior Pre-Petition Financing Documents.   To the extent permitted by
section 506(b) of the Bankruptcy Code, the Junior Pre-Petition Lenders, the Junior Collateral
Agent, the Senior Pre-Petition Lenders and the Senior Pre-Petition Collateral Agent shall be
entitled to receive accrued interest, costs, fees (including reasonable attorneys' fees) and
expenses with respect to the Junior Pre-Petition Indebtedness and the Senior Pre-Petition

- 17 -

Indebtedness until the Junior Pre-Petition Indebtedness and the Senior Pre-Petition Indebtedness have been paid in full.

(c)    **ANY AND ALL PAYMENTS OR PROCEEDS REMITTED, OR DEEMED TO BE REMITTED, TO THE POST-PETITION LENDER, THE SENIOR PRE-PETITION LENDERS OR THE JUNIOR PRE-PETITION LENDERS PURSUANT TO THE PROVISIONS OF PARAGRAPH 2 OF THIS FINAL ORDER (OR ANY SIMILAR PROVISIONS) SHALL BE RECEIVED, OR DEEMED RECEIVED, BY THE POST-PETITION LENDER, THE SENIOR PRE-PETITION LENDERS AND THE JUNIOR PRE-PETITION LENDERS FREE AND CLEAR OF ANY CLAIM, CHARGE, ASSESSMENT OR OTHER LIABILITY, INCLUDING, WITHOUT LIMITATION, ANY SUCH CLAIM OF THE FINAL ORDER, BASED ON SECTION 552(B) OF THE BANKRUPTCY CODE, WHETHER DIRECTLY OR INDIRECTLY, ALL OF WHICH ARE HEREBY WAIVED BY THE DEBTORS, SUBJECT TO POTENTIAL DISGORGEMENT AS CONTEMPLATED BY THE INVESTIGATION PERIOD PROVISIONS OF PARAGRAPH 9 HEREOF.**

(d)    Notwithstanding anything to the contrary contained in the Junior Pre-Petition Financing Documents or the Senior Pre-Petition Financing Documents, the Debtors are hereby authorized to give notices, make requests, make payments, receive payments and notices, give receipts and otherwise take action on behalf of the Debtors under the Junior Pre-Petition Financing Documents, the Senior Pre-Petition Financing Documents and this Final Order.

3.    Post-Petition Security Interests.    Pursuant to sections 364(c)(2) and (3) and 364(d)(1) of the Bankruptcy Code, and subject to the next sentence, as security for the Post-Petition Loan, the Post-Petition Lender is hereby granted valid, binding, enforceable and

- 18 -

perfected liens (the "**Post-Petition Liens**") in all currently-owned or hereafter-acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (other than avoidance actions by the Debtors's estate, and proceeds thereof, pursuant to Sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code), and all proceeds, products, rents and profits thereof, including, without limitation, all types of property which served as the Junior Pre-Petition Collateral and the Senior Pre-Petition Collateral and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the "**Post-Petition Collateral**").  The Post-Petition Liens on the Post-Petition Collateral shall be (a) first and senior perfected liens pursuant to section 364(d)(1) of the Bankruptcy Code on the Post-Petition Collateral which, on the Petition Date, was subject to first and senior liens or security interests claimed by the Junior Pre-Petition Lender or the Senior Pre-Petition Lender, (b) first and senior perfected liens pursuant to section 364(c)(2) of the Bankruptcy Code on the Post-Petition Collateral which was not subject to perfected liens or security interests on the Petition Date, and (c) junior perfected liens pursuant to section 364(c)(3) of the Bankruptcy Code on Post-Petition Collateral which, on the Petition Date, was subject to any valid and perfected lien in favor of an entity other than the Junior Pre-Petition Lender or the Senior Pre-Petition Lender, which junior perfected liens of the Post-Petition Lender shall be (i) senior to any junior lien of the Junior Pre-Petition Lenders or the Senior Pre-Petition Lenders and (ii) junior to valid and perfected pre-petition liens as to assets on which the Junior Pre-Petition Lenders or Senior Pre-Petition Lenders did not have a lien.  Except as expressly set forth in this Final Order, the liens and security interests granted in this Final Order shall not be subordinated to or made *pari passu* with any other lien pursuant to an Order of the Court under section 364(d) of the Bankruptcy Code or otherwise.  The Post-Petition Lender reserves the right to seek to

- 19 -

prime any lien that is superior to any lien of the Post-Petition Lender, and the UCC Parties reserve their rights to contest same.

4.    **WAIVER OF CLAIMS UNDER SECTIONS 546 AND 506(C).**

(a)    THE DEBTORS HEREBY WAIVE THEIR RIGHT UNDER SECTION 546(H) OF THE BANKRUPTCY CODE TO SEEK AN ORDER AUTHORIZING THE RETURN OF GOODS SHIPPED TO THE DEBTORS BEFORE THE PETITION DATE. THE DEBTORS FURTHER WAIVE THEIR RIGHTS UNDER SECTION 506(C) OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS FINAL ORDER SHALL BE DEEMED TO CONSTITUTE A CONSENT BY THE JUNIOR PRE-PETITION LENDERS, THE SENIOR PRE-PETITION LENDERS OR THE POST-PETITION LENDER TO ANY CHARGE, LIEN, ASSESSMENT OR CLAIM AGAINST THE JUNIOR PRE-PETITION COLLATERAL, THE SENIOR PRE-PETITION COLLATERAL OR THE POST-PETITION COLLATERAL UNDER SECTION 506(C) OF THE BANKRUPTCY CODE OR OTHERWISE.

(b)    NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH IN THIS FINAL ORDER, IN THE EVENT THAT THE EXPENSES AND FEES OF COUNSEL FOR THE COMMITTEE ARE NOT PAID BY AN ADVANCE ON THE POST-PETITION LOAN PRIOR TO THE TERMINATION DATE, IN THE AMOUNT AND AS SET FORTH IN PARAGRAPH 1(F) ABOVE, THE JUNIOR PRE-PETITION LENDERS' LIENS AND THE SENIOR PRE-PETITION LENDERS' LIENS SHALL BE SUBJECT TO A CARVE-OUT (THE "CARVE-OUT"), IN AN AMOUNT NOT TO EXCEED $30,000, IN FAVOR OF COUNSEL TO THE COMMITTEE FOR ITS ACCRUED FEES AND EXPENSES. THE CARVE-OUT SHALL BE SUBJECT TO THE

- 20 -

FOLLOWING LIMITATIONS: (A) THE CARVE-OUT SHALL ONLY APPLY TO THE EXTENT SUCH FEES AND EXPENSES ARE APPROVED BY THE COURT; (B) THE CARVE-OUT SHALL ONLY APPLY TO THE EXTENT THERE ARE NOT OTHERWISE UNENCUMBERED FUNDS AVAILABLE TO PAY SUCH FEES AND EXPENSES WHEN THE COURT APPROVES AND AUTHORIZES PAYMENT OF SUCH FEES AND EXPENSES; AND (C) THE CARVE-OUT SHALL NOT APPLY TO FEES AND EXPENSES INCURRED BY COUNSEL TO THE COMMITTEE, DIRECTLY OR INDIRECTLY, IN RESPECT OF, ARISING FROM, OR RELATING TO, THE INITIATION OR PROSECUTION OF ANY ACTION (I) CONTESTING THE VALIDITY, PRIORITY, EXTENT OR AMOUNT OF THE CLAIMS OR LIENS ASSERTED BY THE JUNIOR PRE-PETITION LENDERS, THE SENIOR PRE-PETITION LENDERS OR THE POST-PETITION LENDER, (II) FOR AVOIDANCE OR RECOVERY OF A PREFERENCE OR FRAUDULENT CONVEYANCE FROM THE JUNIOR PRE-PETITION LENDERS OR THE SENIOR PRE-PETITION LENDERS, (III) SEEKING TO EXERCISE ANY OTHER AVOIDANCE POWER AGAINST THE JUNIOR PRE-PETITION LENDERS OR THE SENIOR PRE-PETITION LENDERS, OR (IV) ASSERTING ANY OTHER CLAIM OR DEFENSE AGAINST THE JUNIOR PRE-PETITION LENDERS OR THE SENIOR PRE-PETITION LENDERS, PROVIDED, HOWEVER, THAT THE FOREGOING LIMITATIONS SHALL NOT INCLUDE ALLOWED FEES AND EXPENSES INCURRED IN ANY INVESTIGATION RELATING THERETO. THE CARVE-OUT SHALL BE FOR ALLOWED EXPENSES AND FEES INCURRED PRIOR TO THE TERMINATION DATE. FURTHERMORE, IF SUCH ALLOWED FEES AND EXPENSES ARE LESS THAN $30,000 ON THE

**TERMINATION DATE, THEN ADDITIONAL POST-TERMINATION DATE ALLOWED FEES AND EXPENSES EQUAL TO THE LESSER OF (Y) $10,000 OR (Z) $30,000, LESS THE AMOUNT OF ALLOWED EXPENSES AND FEES INCURRED AS OF THE TERMINATION DATE, SHALL BE COVERED BY THE CARVE-OUT. FOR PURPOSES OF CLARITY, IN NO EVENT SHALL THE CARVE-OUT EXCEED $30,000 IN TOTAL AMOUNT.**

5. <u>Section 364(c)(1) Priority</u>. In addition to the foregoing Post-Petition Liens securing the Post-Petition Loan, the Post-Petition Loan shall have priority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code ("**Superpriority**"). Neither (i) costs or administrative expenses that have been or may be incurred in the Case, in any Chapter 7 case following conversion of a Debtors' Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding related thereto, nor (ii) priority claims, including, without limitation, any other Superpriority claims, are or will be prior to or on a parity with (y) the claims of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or Post-Petition Lender against the Debtors that arise or may arise, as applicable, out of the Post-Petition Loan or any provision of this Final Order or (z) the liens and security interests granted herein on, in and to the Post-Petition Collateral.

6. <u>Modification of Automatic Stay</u>. The automatic stay extant under section 362(a) of the Bankruptcy Code shall be, and is hereby, modified to the extent necessary to permit the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender to receive, collect and apply payments and proceeds in respect of the Junior Pre-Petition Collateral,

the Senior Pre-Petition Collateral and the Post-Petition Collateral in accordance with the terms and provisions of this Final Order.

7.      Events of Default.  Each of the following shall be Events of Default under this Final Order:

(a)      cash disbursements by the Debtors other than as allowed in the Approved Budget and in this Final Order or cash disbursements, measured on a weekly basis, which exceed 110% of the aggregate amount of disbursements set forth in the Approved Budget for such week, unless agreed to by the Post-Petition Lender in writing in its sole discretion;

(b)      the failure to comply with any of the obligations imposed on the Debtors by this Final Order;

(c)      the filing of any adversary proceeding which (i) challenges the amount, validity, enforceability, perfection or priority of the Junior Pre-Petition Indebtedness, the Senior Pre-Petition Indebtedness, the Junior Pre-Petition Lenders' Liens on the Junior Pre-Petition Collateral or the Senior Pre-Petition Lenders' Liens on the Senior Pre-Petition Collateral in respect thereof, (ii) seeks to or otherwise consents to the invalidation, subordination, recharacterization, avoidance or other challenge to the liens granted to secure the Junior Pre-Petition Indebtedness, the Senior Pre-Petition Indebtedness or the Post-Petition Loan, or (iii) otherwise asserts any claims or causes of action against the Junior Pre-Petition Lenders or the Senior Pre-Petition Lenders on behalf of the Debtors' estate;

(d)      the dismissal or suspension of the Case or the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code;

(e)      the appointment of a trustee in the Case;

446059.8 054391-40406

(f)     the filing of any motion seeking entry of an order of the Bankruptcy Court granting a super-priority claim or lien *pari passu* with, or senior to, that granted herein or in a Final Order to the Post-Petition Lender, unless the proceeds of any financing obtained in connection with the requested grant of such super-priority claim or lien to another party have shall be paid indefeasibly to the Post-Petition Lender to pay the Post-Petition Indebtedness in full;

(g)     entry of an order of a court of competent jurisdiction reversing, staying, vacating or rescinding this Final Order;

(h)     entry of an order of a court of competent jurisdiction amending, supplementing or otherwise modifying this Final Order without the prior written consent of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender;

(i)     entry of an order of the Bankruptcy Court in the Case appointing an examiner under section 1106(b) of the Bankruptcy Code;

(j)     the entry of an order or orders granting relief from the automatic stay so as to allow a third party or third parties to proceed against any asset or assets of the Debtors which have a value in excess of $15,000 in the aggregate;

(k)     the filing of any pleading by the Debtors seeking, or otherwise consenting to, any of the matters set forth in any one or more of the subsections of this Paragraph 7; or,

(l)     Howard Korenthal ceasing to act as chief restructuring officer for the Debtors.

8.     <u>Termination Date and Enforcement of Event of Default</u>.

(a)     The Debtors' authority to borrow pursuant to the terms of this Final Order shall terminate, without notice to the Debtors or further leave of Court (i) automatically on the

- 24 -

Maturity Date, unless the Post-Petition Lender agrees to extend the Maturity Date pursuant to Paragraph 1(a) hereof or upon further order of the Court and then in such case, upon the extended Maturity Date, or (ii) after an Event of Default (in either case, the "**Termination Date**"), unless, following the occurrence of an Event of Default, such authority is extended by the written agreement of the Debtors and the Post-Petition Lender, provided, however, nothing herein shall obligate the Post-Petition Lender to make any advances after the Termination Date. All outstanding amounts of the Post-Petition Loan shall be due and payable at 11:00 a.m. Chicago time on the Termination Date.  Following the occurrence of an Event of Default, the Post-Petition Lender shall have no obligation to make any additional Post-Petition Loans.

(b)    **UPON THE OCCURRENCE OF AN EVENT OF DEFAULT AND AT ANY TIME THEREAFTER, THE AUTOMATIC STAY SHALL BE LIFTED WITH RESPECT TO THE JUNIOR COLLATERAL AGENT, THE JUNIOR PRE-PETITION LENDERS, THE SENIOR COLLATERAL AGENT, THE SENIOR PRE-PETITION LENDERS AND THE POST-PETITION LENDER WITHIN FOUR BUSINESS DAYS AFTER WRITTEN NOTICE TO THE DEBTORS, THE COMMITTEE, THE UCC PARTIES, AND ALL PARTIES ENTITLED TO NOTICE, SO THAT SUCH PARTIES MAY EXERCISE THE RIGHTS GRANTED TO SUCH PARTIES HEREUNDER AS TO ALL OR SUCH PART OF THE JUNIOR PRE-PETITION COLLATERAL, THE SENIOR PRE-PETITION COLLATERAL OR THE POST-PETITION COLLATERAL, AS SUCH PARTIES, IN THEIR SOLE DISCRETION, SHALL ELECT, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO TAKE POSSESSION OF AND SELL THE JUNIOR PRE-PETITION COLLATERAL, THE SENIOR PRE-PETITION COLLATERAL OR THE POST-PETITION COLLATERAL IN ACCORDANCE WITH**

- 25 -

THE TERMS OF THE UNIFORM COMMERCIAL CODE TO SATISFY ANY JUNIOR PRE-PETITION INDEBTEDNESS, SENIOR PRE-PETITION INDEBTEDNESS OR THE POST-PETITION INDEBTEDNESS, AS APPLICABLE, PROVIDED, HOWEVER, IF SUCH DEFAULT OCCURS UNDER PARAGRAPH 7(A) OR 7(B) HEREOF, THE DEBTORS SHALL HAVE A RIGHT TO CURE SUCH DEFAULT PRIOR TO THE EXPIRATION OF THE FOUR DAY NOTICE PERIOD DESCRIBED ABOVE. THE POST-PETITION LENDER, IN THE EXERCISE OF ITS REASONABLE DISCRETION, SHALL HAVE THE RIGHT TO DETERMINE WHETHER SUCH CURE IS EFFECTIVE AND SHALL PROMPTLY NOTIFY THE DEBTORS AND THE COMMITTEE OF THEIR DETERMINATION.** Subject to the rights of holders of any senior liens, the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender shall be entitled to apply the payments or proceeds of the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral and the Post-Petition Collateral in accordance with the provisions of this Final Order and in no event shall the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral or the Post-Petition Collateral or otherwise.

(c)     Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender under this Final Order, including, without limitation, the liens and Superpriority granted herein, shall survive the Termination Date.

- 26 -

446059.8 054391-40406

(d)     Notwithstanding anything herein to the contrary, no proceeds of the Post-Petition Loan, no proceeds of the Junior Pre-Petition Collateral, no proceeds of the Senior Pre-Petition Collateral or the Post-Petition Collateral shall be used for the purpose of: (i) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Junior Pre-Petition Indebtedness, Senior Pre-Petition Indebtedness or any liens or security interests with respect thereto, or any other rights or interest of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender therein, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender; (ii) preventing, hindering, or delaying the Post-Petition Lender's enforcement or realization upon any of the Post-Petition Collateral; (iii) using Cash Collateral or selling any Collateral except as specifically permitted in this Final Order or by order of the Bankruptcy Court; (iv) incurring indebtedness except as permitted by this Final Order; or (v) modifying the Post-Petition Lender's rights hereunder.

9.     **INVESTIGATION PERIOD.   THE FINDINGS AND STIPULATIONS CONTAINED IN PARAGRAPHS D THROUGH P ABOVE, AND THE REPAYMENT OF THE PRE-PETITION INDEBTEDNESS CONTEMPLATED BY PARAGRAPH 2 ABOVE, SHALL BE BINDING UPON ALL CREDITORS AND PARTIES IN INTEREST, INCLUDING WITHOUT LIMITATION, THE COMMITTEE, UNLESS: (A) A PARTY IN INTEREST WITH STANDING TO DO SO HAS FILED AN ADVERSARY PROCEEDING CHALLENGING THE AMOUNT, VALIDITY, ENFORCEABILITY, PERFECTION OR PRIORITY OF THE JUNIOR PRE-PETITION INDEBTEDNESS, THE SENIOR PRE-PETITION INDEBTEDNESS, THE JUNIOR PRE-PETITION**

- 27 -

LENDERS' LIENS ON THE JUNIOR PRE-PETITION COLLATERAL OR THE SENIOR PRE-PETITION LENDERS' LIENS ON THE SENIOR PRE-PETITION COLLATERAL IN RESPECT THEREOF, OR OTHERWISE ASSERTING ANY CLAIMS OR CAUSES OF ACTION AGAINST THE JUNIOR PRE-PETITION LENDERS OR THE SENIOR PRE-PETITION LENDERS ON BEHALF OF THE DEBTORS' ESTATE, NO LATER THAN THE DATE THAT IS SEVENTY-FIVE (75) DAYS AFTER THE ENTRY OF THE INTERIM ORDER, AND, IN THE CASE OF THE COMMITTEE, NO LATER THAN 11:59 P.M. ON DECEMBER 2, 2007 (THE "INVESTIGATION PERIOD") WITH RESPECT TO ANY CHALLENGE RELATING TO THE JUNIOR PRE-PETITION INDEBTEDNESS, THE SENIOR PRE-PETITION INDEBTEDNESS, THE JUNIOR PRE-PETITION LENDERS' LIENS ON THE JUNIOR PRE-PETITION COLLATERAL OR THE SENIOR PRE-PETITION LENDERS' LIENS ON THE SENIOR PRE-PETITION COLLATERAL, OR OTHERWISE RELATING TO ANY CLAIMS OR CAUSES OF ACTION AGAINST THE JUNIOR PRE-PETITION LENDERS OR THE SENIOR PRE-PETITION LENDERS; AND (B) THE COURT RULES IN FAVOR OF THE PLAINTIFF IN ANY SUCH TIMELY FILED ADVERSARY PROCEEDING AND SUCH RULING BECOMES A FINAL ORDER AFTER THE COMPLETION OF ALL FORMS OF APPELLATE REVIEW OR THE TIME FOR SEEKING SUCH REVIEW HAS LAPSED WITHOUT REVIEW BEING REQUESTED. STANDING TO FILE THE ADVERSARY PROCEEDING DESCRIBED IN SUBPARAGRAPH (A) OF THIS PARAGRAPH IS HEREBY CONFERRED UPON THE COMMITTEE. IF NO SUCH ADVERSARY PROCEEDING IS COMMENCED DURING THE INVESTIGATION PERIOD, (W) THE REPAYMENT OF THE JUNIOR

- 28 -

PRE-PETITION INDEBTEDNESS AND THE SENIOR PRE-PETITION INDEBTEDNESS PURSUANT TO THE TERMS OF THIS FINAL ORDER SHALL BE DEEMED FINAL AND INDEFEASIBLE, NOT SUBJECT TO OBJECTION, DEFENSE, SET-OFF OR SUBORDINATION AND OTHERWISE UNAVOIDABLE, (X) THE JUNIOR PRE-PETITION INDEBTEDNESS AND SENIOR PRE-PETITION INDEBTEDNESS SHALL CONSTITUTE ALLOWED CLAIMS, NOT SUBJECT TO AVOIDANCE, OBJECTION, DEFENSE, COUNTERCLAIM, OFFSET, OR SUBORDINATION, FOR ALL PURPOSES IN THE CASE AND IN ANY SUBSEQUENT CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, (Y) THE JUNIOR PRE-PETITION LENDERS' LIENS ON THE JUNIOR PRE-PETITION COLLATERAL AND THE SENIOR PRE-PETITION LENDERS' LIENS ON THE SENIOR PRE-PETITION COLLATERAL SHALL BE DEEMED LEGAL, VALID, BINDING, PERFECTED, NOT SUBJECT TO AVOIDANCE, DEFENSE, COUNTERCLAIM, OFFSET OF ANY KIND, OR SUBORDINATION, AND (Z) THE JUNIOR PRE-PETITION LENDER, THE JUNIOR PRE-PETITION INDEBTEDNESS, THE JUNIOR PRE-PETITION FINANCING DOCUMENTS, THE JUNIOR PRE-PETITION LENDERS' LIENS ON THE JUNIOR PRE-PETITION COLLATERAL, THE SENIOR PRE-PETITION LENDERS, THE SENIOR PRE-PETITION INDEBTEDNESS, THE SENIOR PRE-PETITION FINANCING DOCUMENTS AND THE SENIOR PRE-PETITION LENDERS' LIENS ON THE SENIOR PRE-PETITION COLLATERAL SHALL NOT BE SUBJECT TO ANY OTHER OR FURTHER CHALLENGE BY ANY PARTY IN INTEREST SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS' ESTATE, INCLUDING, WITHOUT LIMITATION, ANY SUCCESSOR THERETO.  THE FILING

446059.8 054391-40406

OF ANY SUCH ADVERSARY PROCEEDING, BY ANY PARTY-IN-INTEREST (INCLUDING, WITHOUT LIMITATION, THE COMMITTEE) SHALL CONSTITUTE AN EVENT OF DEFAULT. SUBJECT ONLY TO THE FOREGOING PROVISIONS OF THIS PARAGRAPH 9, THE JUNIOR PRE-PETITION LENDERS AND THE SENIOR PRE-PETITION LENDERS SHALL BE DEEMED RELEASED OF ALL CLAIMS, RIGHTS, CAUSES OF ACTION OR DEFENSES BY, AND ALL LIABILITIES OWING TO, THE DEBTORS, THE COMMITTEE AND ALL OF THE DEBTORS' CREDITORS, ARISING OUT OF OR BASED ON ANY FACTS OR CIRCUMSTANCES RELATED TO THIS BANKRUPTCY CASE.

10.    No Additional Liens. Except as expressly consented to in writing by the Post-Petition Lender or as otherwise provided herein, the Debtors shall be prohibited at all times during the Case from granting liens on and security interests in the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral, the Post-Petition Collateral, or any portion thereof to any other parties, pursuant to section 364 of the Bankruptcy Code or otherwise, which liens and security interests, as the case may be, are senior, or on a parity with, the liens and security interests of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender therein (excluding (i) any junior liens resulting from Court-approved reclamation claims, (ii) any replacement liens, provided such liens shall have the same priority as such liens had pre-petition, and (iii) liens transferred by Order of the Court, provided such liens shall have the same priority as such liens had pre-petition), unless the proceeds of any loan obtained by granting such liens and security interests are used to indefeasibly pay in full the claims of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender.  Except in accordance

- 30 -

with the terms of this Final Order, the Debtors are prohibited from (a) using the Cash Collateral, and (b) using the Post-Petition Collateral.

11.     Financing Documents; Conflicts.

(a)     The Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages and financing statements) and to pay, as such become due, fees and expenses that may be required or necessary for the Debtors' performance hereunder, including, without limitation: (i) fees and other expenses described in the Interim Order and this Final Order or (subject to section 506(b) of the Bankruptcy Code) the Junior Pre-Petition Financing Documents or the Senior Pre-Petition Financing Documents (other than fees and expenses of the Debtors' professionals, which may only be paid upon the appropriate entry of an order of this Court), (ii) agent fees, (iii) commitment fees, (iv) letter of credit fees, (v) facility fees, and (vi) reasonable fees and expenses of attorneys, financial advisers and accountants retained by the Post-Petition Lender.

(b)     Except as modified by this Final Order, the Junior Pre-Petition Financing Documents and the Senior Pre-Petition Financing Documents shall remain in full force and effect with respect to the Junior Pre-Petition Indebtedness and the Senior Pre-Petition Indebtedness. To the extent there exists any conflict between the Motion, the Interim Order, this Final Order and the terms of any of the Junior Pre-Petition Financing Documents or the Senior Pre-Petition Financing Documents, this Final Order shall govern and control.

12.     Independent Actions of the Debtors.     The Debtors acknowledge that their promises and actions contained herein are made and taken of their own free will and volition.

- 31 -

The Debtors acknowledge that they have chosen, of their own free and voluntary acts, their legal counsel and financial advisors and accountants.

13.    Fees and Expenses Incurred by the Lenders; Automatic Perfection.

(a)    As part of the Debtors' obligations hereunder, and as consideration for the agreement of the Post-Petition Lender to provide the Post-Petition Loan to the Debtors, the Debtors shall promptly reimburse the Post-Petition Lender for its reasonable costs, fees, charges and expenses to the extent provided for pursuant to the Interim Order, this Final Order, and the Pre-Petition Credit Agreement, as the case may be. All such costs, fees, charges and expenses shall be part of the Post-Petition Loan and shall have the same rights, status and priority as that loan.

(b)    The Post-Petition Liens and all other liens and security interests granted herein shall, pursuant to this Final Order, be, and they hereby are, deemed automatically perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the Post-Petition Lender shall, in its sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order or this Final Order, as the case may be, and the automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect such filings.

14.    Amendments.

(a)    Nothing herein shall prohibit the Debtors and the Post-Petition Lender from amending the terms of the financing authorized hereby by mutual agreement and upon three (3) calendar days advance notice to the Committee without the necessity of obtaining Court

- 32 -

approval thereof, so long as such amendment does not alter the amount of loan proceeds advanced, the security interests granted, or payments or deposits to be made hereunder. The Debtors shall provide timely notice of all such amendments to parties on the service list, including the United States Trustee.

(b) Based on the findings set forth in Paragraphs S and T of this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangements contemplated by this Final Order, in the event any or all of the provisions of the Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Final Order, and the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender, as the case may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

15. Continued Hearing. A continued hearing on the Post-Petition Financing shall be held on October 30, 2007 at ____ before the Honorable Jacqueline P. Cox in Courtroom 619 of the Federal Courthouse located at 219 S. Dearborn Street, Chicago, Illinois 60604.

16. No Waiver. Notwithstanding anything to the contrary herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of the Junior Pre-Petition Lenders, the Senior Pre-

- 33 -

Petition Lenders or the Post-Petition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders and the Post-Petition Lender to (i) request adequate protection of their interests in the Junior Pre-Petition Collateral, the Senior Pre-Petition Collateral or the Post-Petition Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, (ii) request either dismissal of the Case or conversion of the Case to a case under chapter 7 or the appointment of a chapter 11 Trustee, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Junior Pre-Petition Lenders, the Senior Pre-Petition Lenders or the Post-Petition Lender.

17.    This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Final Order.

18.    The terms and conditions of this Final Order vary from the requirements of Local Rule 4001-2 of the Bankruptcy Court. All terms and conditions of this Final Order that vary from Local Rule 4001-2, including, without limitation, those that are highlighted, are fully enforceable, notwithstanding Local Rule 4001-2.

Dated:    10/3/07

ENTERED: *Jacqueline P. Cox*

J. Cox

UNITED STATES BANKRUPTCY JUDGE

446059.8 054391-40406

**AGREED:**

CIPHER CAPITAL PARTNERS LLC

By: _____
    One of its Attorneys

RICHARD M. BENDIX, JR.  (#0168130)
MORGAN M. SMITH (#6287435)
SCHWARTZ COOPER CHARTERED
180 North LaSalle Street, Suite 2700
Chicago, Illinois  60601
Phone: (312) 346-1300
Fax: (312) 264-2418

**APPROVED AS TO FORM AND SUBSTANCE:**

THE DEBTORS

By: _____
    One of their Attorneys

JAMES CHATZ
MIRIAM STEIN
ARNSTEIN & LEHR, LLC
120 S. Riverside Plaza, Unit 1200
Chicago, Illinois 60606
Phone: (312) 876-7100
Fax: (617) 876-0288

THE JUNIOR PRE-PETITION LENDERS THAT ARE PARTY TO THE SUBORDINATION
AGREEMENT AND THE SENIOR PRE-PETITION LENDERS

By: _____
    One of their Attorneys

RICHARD M. BENDIX, JR.  (#0168130)
MORGAN M. SMITH (#6287435)
SCHWARTZ COOPER CHARTERED
180 North LaSalle Street, Suite 2700
Chicago, Illinois  60601
Phone: (312) 346-1300
Fax: (312) 264-2418

# Universal Foods
## Chapter 11 DIP Budget
10/2/2007

| Disbursement Description | Budget Amount | 9/3/2007 | 9/10/2007 | 9/17/2007 | 9/24/2007 | 10/1/2007 | 10/8/2007 | 10/15/2007 | 10/22/2007 | 10/29/2007 | Payment of Professional Fees at Closing of Savannah Sale From Sale Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Savannah** | | | | | | | | | | | |
| Electric Bill | 10,000 | | | | | | 5,000 | | | 5,000 | |
| Lawn services | 2,800 | | | | | | | | 2,800 | | |
| Payroll | 30,000 | | 15,000 | | | 15,000 | | | | | |
| Waste management | 21,000 | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | | |
| Waste management critical vendor payment | 15,000 | | | 15,000 | | | | | | | |
| Pest Control | 3,000 | | 1,000 | | | 1,000 | 1,000 | | | | |
| Forklift leases | 5,000 | | 2,500 | | | 2,500 | | | | | |
| Fumigation | 4,000 | | | 4,000 | | | | | | | |
| Telephone | 3,000 | | | | 1,500 | | 1,000 | 500 | | | |
| Janitorial | 750 | | 250 | | | 250 | | 250 | | | |
| DHL & mail | 200 | | 50 | | 50 | | 50 | 50 | | | |
| Contingency | 17,500 | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | | |
| | 0 | | | | | | | | | | |
| **Total Savannah** | **112,250** | **0** | **24,300** | **24,500** | **7,050** | **24,250** | **12,550** | **6,300** | **8,300** | **5,000** | **0** |
| **Virginia** | | | | | | | | | | | |
| Payroll | 2,000 | | 500 | | 500 | | 500 | | 500 | | |
| Electric | 1,000 | | 500 | | | | 500 | | | | |
| Telephone | 500 | | 250 | | | | 250 | | | | |
| Water | 100 | | 50 | | | | 50 | | | | |
| **Total Virginia** | **3,600** | **0** | **1,300** | **0** | **500** | **0** | **1,300** | **0** | **500** | **0** | **0** |
| **Professional fees and Chapter 11 expenses** | | | | | | | | | | | |
| Morris Anderson--CRO | 30,000 | | | | | | | | | | 30,000 |
| Arnstein & Lehr--Debtors Counsel | 50,000 | | | | | | | | | | 50,000 |
| Schwartz Cooper | 50,000 | | | | | | | | | | 50,000 |
| Creditors committee counsel | 30,000 | | | | | | | | | | 30,000 |
| Property insurance | 43,000 | | | | | | | 43,000 | | | |
| D & O insurance | 26,000 | | 13,000 | | | 13,000 | | | | | |
| Advertising | 40,000 | | | | | | 20,000 | | 20,000 | | |
| U S Trustee fees | 7,500 | | | | | 3,750 | | | 3,750 | | |
| Utility deposits | 15,000 | | | 15,000 | | | | | | | |
| | **291,500** | **0** | **13,000** | **15,000** | **0** | **16,750** | **20,000** | **43,000** | **23,750** | **0** | **160,000** |
| **Grand Total** | **407,350** | **0** | **38,600** | **39,500** | **7,550** | **41,000** | **33,850** | **49,300** | **32,550** | **5,000** | **160,000** |

Ex A