## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re:

UNIVERSAL FOOD AND BEVERAGE COMPANY, INC., et al.,

                          Debtors.

Chapter 11
Case No. 07-15955
Jointly Administered

Hon. Jacqueline P. Cox

### FINAL ORDER AUTHORIZING
### USE OF CASH COLLATERAL

This matter coming to be heard upon the status hearing on the Interim Order (1) Authorizing Universal Food & Beverage Company, Inc. et al, debtors and debtors in possession ("Debtors") to Use Cash Collateral and (2) Granting Certain Liens and Other Relief to the Lender (defined below) entered on October 30, 2007; due and proper notice of the final hearing on the Interim Order, in accordance with Bankruptcy Rule 4001, having been given to all parties entitled thereto, including the office of the United States Trustee, the Lender, all other parties asserting an interest in the Debtors' cash collateral, the Official Committee of Unsecured Creditors ("Committee") and the list of 20 largest unsecured creditors; the Court being fully advised in the premises, and THE DEBTORS HAVING STIPULATED AS FOLLOWS:

A.    Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on August 31, 2007 ("Petition Date").

B.    As of the Petition Date, the Debtors stipulate that they are indebted to the following pre-petition lenders (collectively, the "Lender") as follows:

   a.    Cipher, Bruce Neviaser ("Neviaser") and Gamma Opportunity Capital Partners LP ("Gamma" and collectively, the "Senior Pre-Petition Lenders") pursuant to that certain Loan and Security Agreement dated as of August

31, 2007 among the Senior Pre-Petition Lenders and the Debtors in the principal amount of $135,000; and

b.  Midsummer Capital LLC as collateral agent ("Collateral Agent") for certain junior pre-petition lenders ("Junior Pre-Petition Lenders") pursuant to (i) those certain Amended and Restated Senior Secured Convertible Notes dated February 14, 2007; (ii) that certain Security Agreement dated June 21, 2006 by and among the Collateral Agent and the Debtors; and (iii) that certain Security Agreement dated on or about January 1, 2007 (collectively, the "Midsummer Loan Documents").  Pursuant to the Midsummer Loan Documents, the Debtors are indebted to the Collateral Agent, on behalf of the pre-petition lenders, in the principal amount of $5,100,000.

C.  The Debtors stipulate that the liens and security interests ("Liens") held by Lender are enforceable against all of the Debtors' assets (collectively, the "Collateral") and that Lender holds a valid and perfected first priority security interest in and lien on the Collateral and the proceeds thereof.

D.  Since the Petition Date, Debtors have remained in possession of their assets as debtors-in-possession and have managed their assets pursuant to Section 1107 and Section 1108 of the Bankruptcy Code.

E.  On September 12, 2007, the Court entered an agreed interim order authorizing the Debtors to obtain post-petition financing (the "DIP Loan") from Cipher Capital Partners, LLC (the "DIP Lender").  On October 3, 2007, the Court entered a final order approving the DIP Loan from Cipher (the "DIP Financing Order").

F.  On October 25, 2007, the Court approved a sale of the Debtors' assets in Savannah, Georgia (the "Georgia Assets") for the purchase price of $6,806,500.  The closing on the sale of the Georgia Assets is scheduled for October 29, 2007.

G.  The Debtors stipulate that the proceeds of the Georgia Sale are the proceeds of the Lender's Collateral and as such, the sale proceeds (to the extent of the

Lender's indebtedness) constitute the Lender's "cash collateral" under Section 363(a) of the Bankruptcy Code.

H.      The Debtors require the use of the Cash Collateral in order to manage their remaining assets. Without the use of the Cash Collateral, the Debtors' assets will diminish, and the Debtors will not be able to maximize the value of their assets within this Chapter 11. Accordingly, the Debtors have requested that the Lender allow them use of the Cash Collateral for the payment of ordinary and necessary operating expenses pursuant to a budget attached hereto as Exhibit A (the "Budget").

I.      It is in the best interests of the Debtors' estates and their creditors that the Debtors be allowed to use the Cash Collateral on the conditions set forth herein.

J.      Entry of a Final Order granting the relief requested herein ("Final Order") shall in no way impair or otherwise affect the rights of the Lender under applicable law in and to the Collateral, as those rights existed on the Petition Date.

IT IS HEREBY ORDERED, AND AGREED AMONG THE PARTIES that:

1.      The paragraphs set forth above are incorporated herein by this reference thereto.

2.      As used herein, "Cash Collateral" shall mean all cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents derived from the Collateral.

3.      Subject to the terms and conditions of this Final Order, the Debtors are hereby authorized to use the Cash Collateral to pay (i) only the amounts reflected on the Budget to the extent not otherwise paid prior to the entry of this Final Order; and (ii) the reasonable professional fees and expenses of Cooley Godward Kronish LLP,

3

counsel to the Collateral Agent, which shall be reimbursed pursuant to Section 506(b) of the Bankruptcy Code without necessity of further approval by the Court within ten (10) days of submission of invoices to the Debtors and the Committee ("Authorized Expenses"); provided however, that the Debtors shall pay for the Authorized Expenses with funds from the DIP Loan, if any, prior to spending Cash Collateral to pay for the Authorized Expenses.

4.      The Debtors shall use their debtor in possession checking account maintained by Howard Korenthal, Chief Restructuring Officer of the Debtors ("DIP Account") to pay the Authorized Expenses.

5.      The entry of this Final Order shall not constitute, or be deemed to be, a waiver of any of Lender's rights or claims under applicable law.

6.      Subject to the provisions of this Final Order, only (i) the expenses in the amounts indicated on the Budget and (ii) the reasonable professional fees and expenses of Cooley Godward Kronish LLP, counsel to the Collateral Agent, are deemed to be ordinary, necessary and reasonable expenses.

7.      The Debtors shall provide a weekly reconciliation to the Lender of the prior week's expenditures compared to amounts budgeted. The weekly reconciliation shall be provided to the Lender on or before Tuesday of any given week.

8.      As part of the adequate protection for any diminution in the value of the Lender's interest in the Collateral, including the Cash Collateral, pursuant to Sections 361 and 363 of the Bankruptcy Code, Debtors hereby grant to the Lender additional and replacement senior liens and security interests in and to the Collateral which includes all assets and property of Debtors of any kind or nature whatsoever, wherever located,

4

including, without limitation, all of Debtors' now owned, owned as of the Petition Date, and thereafter or hereafter acquired, right, title and interest in the Collateral, real property, leases, goods, accounts, accounts receivable, chattel paper, contract rights, instruments, documents, general intangibles, claims against third parties, inventory, machinery, equipment, fixtures, leasehold improvements, goodwill, licenses, patents, trademarks, trade names and franchises, together with all parts and appurtenances thereto, accessions to, renewals, replacements, products and proceeds of, and books and records pertaining to, the foregoing. However, the Lender shall not be granted a post-petition lien in avoidance actions under Section 544, 547, 548, 549 and 550 of the Bankruptcy Code.

9.     Debtors have furnished the Lender with proof of property, casualty and liability insurance. In the event of cancellation of any type of insurance, the Debtors shall immediately provide the Lender with Notice of Cancellation.

10.     In the event Debtors fail to satisfy any of the terms or conditions provided herein or the Debtors make an Unauthorized Expenditure, the Lender shall serve upon Debtors a Notice of Default containing a detailed description of the nature of the default and the actions required of Debtors to cure such default. Upon receipt thereof, unless otherwise extended by Lender, the Debtors shall have three (3) days to cure such default. Debtors' failure to cure the default asserted in the Notice of Default within such time limit shall constitute an event of default under this Final Order ("Event of Default").

11.     Upon the earlier of: (i) the occurrence of an Event of Default under this Final Order; (ii) the entry of an order dismissing this case, appointing a trustee in this case, converting this case to a case under Chapter 7 of Bankruptcy Code, or

transferring the venue of this case to another district; (iii) payment of the Lender's indebtedness in full; or (iv) December 2, 2007; this Final Order shall terminate and be of no further force or effect, except that superpriority and adequate protection liens and the Debtor's obligation to reimburse Section 506(b) fees to Cooley Godward Kronish LLP pursuant to Paragraph 3 above shall remain with full force and effect notwithstanding termination of this Final Order.   Upon termination of this Final Order, the Debtors shall be prohibited from using the Collateral and Lenders' cash collateral, Debtors shall promptly reimburse Lender for the amount of Debtors' Unauthorized Expenditure or other depletion of Lender's cash collateral (i.e., the Collateral).  The relief granted herein shall be without prejudice to the rights of Lender to seek additional adequate protection or any other relief under the Bankruptcy Code or applicable law, including, without limitation, reimbursement from Debtors or an administrative claim under Section 507(b) of the Bankruptcy Code.   Further, to the extent that the Debtors' use of any of the Lender's Cash Collateral, the Lender shall be entitled to a superpriority claim limited to the amount of the Cash Collateral used with priority over all administrative claims pursuant to 364(c)(1) of the Bankruptcy Code.    All notices, payments or other communications between the parties provided for hereunder shall be given in writing to the persons listed below via facsimile and mail at the indicated addresses, and shall be deemed effective as of the date sent by the party:

1.      To Debtors:

Howard R. Korenthal
MorrisAnderson & Associates
55 W. Monroe, Suite 2500
Chicago, IL 60604
Fax:  (312) 727-0180

6

and

Miriam R. Stein, Esq.
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606
Facsimile (312) 876-0288

2.    To  Lender:

Richard M. Bendix, Jr., Esq.
Schwartz Cooper Chartered
180 N. LaSalle Street, Suite 2700
Chicago, IL  60601
Fax: (312) 264-2418

and

Eric Haber
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, NY 10036
Fax: (212) 214-0841

3.    To Committee

Jonathan Friedland
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606
Fax: (312) 258-5600

12.    This Final Order shall continue in effect through December 4, 2007, unless terminated earlier pursuant to this stipulation or extended pursuant to written agreement of the parties hereto and approval of the Bankruptcy Court.

13.    Upon entry of this Final Order, the Debtors shall be authorized and directed to: (i) execute and deliver such agreements, information, statements and other documents as Lender may reasonably request, (ii) use the Collateral as provided for herein, and (iii) take such actions as may be necessary or appropriate in order to effect the agreements set forth in this Final Order.

7

14.     Nothing contained in this Final Order shall constitute a determination that the Lender is not entitled to additional adequate protection for continued use of the Cash Collateral.  This Final Order shall not constitute a finding by the Court that Lender's interests in the Collateral are "adequately protected" within the meaning of Sections 361 and 363 of the Bankruptcy Code.  Nothing in this Final Order shall constitute a waiver or estoppel with respect to collateral values or adequate protection based thereon.

15.     Nothing in this Final Order shall in any way prejudice or compromise any rights or claims Lender may have in respect to the Debtors or parties other than the Debtors.

16.     A status hearing on this Final Order is hereby scheduled for <u>December 4, 2007 at 10:30 a.m.</u>

DATED:
11/15/07

ENTER:     *Jacqueline P. Cox*

J. Cox
_____
United States Bankruptcy Judge

8

**Universal Foods**
**Chapter 11 DIP Budget**
10/27/2007

| Disbursement Description | Budget Amount | 10/22/2007 | 10/29/2007 | 11/5/2007 | 11/12/2007 | 11/19/2007 | 11/26/2007 | 12/3/2007 |
|---|---|---|---|---|---|---|---|---|
| **Savannah** | | | | | | | | |
| Electric Bill | 1,000 | | | 1000 | | | | |
| Lawn services | 0 | | | | | | | |
| Payroll | 8,500 | | 8,500 | | | | | |
| Waste clean-up--dumpsters and labor | 25,000 | | 25,000 | | | | | |
| Pest Control | 0 | | | | | | | |
| Fumigation | 0 | | | | | | | |
| Forklift leases | 5,000 | | | 5,000 | | | | |
| Telephone | 0 | | | | | | | |
| Janitorial | 0 | | | | | | | |
| DHL & mail | 0 | | | | | | | |
| All other | 10,000 | | | | 10,000 | | | |
| | 0 | | | | | | | |
| **Total Savannah** | 49,500 | 0 | 33,500 | 6,000 | 10,000 | 0 | 0 | 0 |
| | | | | | | | | |
| **Virginia** | | | | | | | | |
| Payroll | 2,600 | | 600 | 400 | 400 | 400 | 400 | 400 |
| Electric | 400 | 200 | | | | 200 | | |
| Telephone | 0 | | | | | | | |
| Contingency | 1,500 | | 500 | | 500 | | 500 | |
| **Total Virginia** | 4,500 | 200 | 1,100 | 400 | 900 | 600 | 900 | 400 |
| | | | | | | | | |
| **Professional fees and Chapter 11 expenses** | | | | | | | | |
| Morris Anderson--CRO | 72,500 | | 35,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Property Insurance | 95,000 | | 95,000 | | | | | |
| D & O insurance | 26,000 | | 13,000 | | | | | 13,000 |
| Advertising | 16,000 | | | 16000 | | | | |
| U S Trustee fees | 10,000 | | 5,000 | | | | 5,000 | |
| Computer system cost to restart | 10,000 | | 10,000 | | | | | |
| Utility deposits | 0 | | | | | | | |
| | 229,500 | 0 | 158,000 | 23,500 | 7,500 | 7,500 | 12,500 | 20,500 |
| | | | | | | | | |
| **Grand Total** | 283,500 | 200 | 192,600 | 29,900 | 18,400 | 8,100 | 13,400 | 20,900 |

**Cash Summary**

**Universal Foods**
**Chapter 11 DIP Budget**
10/27/2007

| Disbursement Description | Budget Amount | 10/22/2007 | 10/29/2007 | 11/5/2007 | 11/12/2007 | 11/19/2007 | 11/26/2007 | 12/3/2007 |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 173,400 | 173,400 | 173,200 | (19,400) | (49,300) | (67,700) | (75,800) | (89,200) |
| Disbursements | 283,500 | 200 | 192,600 | 29,900 | 18,400 | 8,100 | 13,400 | 20,900 |
| Cash needed | (110,100) | 173,200 | (19,400) | (49,300) | (67,700) | (75,800) | (89,200) | (110,100) |

Chapter 11 DIP Budget 10-25-0711/15/20D710:12 AM